IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | Case No. 2:23-4633-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Hanna Ruth Wierenga and Connor Jackson Haas, | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion for summary judgment on Defendant's counterclaims for breach of contract and negligence. (Dkt. No. 70). Defendants filed a memorandum in opposition and Plaintiff filed a reply. (Dkt. Nos. 72, 73). For the reasons set forth below, Plaintiff's motion for summary judgment on Defendants' counterclaims is granted.

## Factual Background

An automobile accident occurred on October 11, 2021, in which a vehicle driven by Defendant Connor Jackson Haas (hereafter "Connor") struck a vehicle driven by Defendant Hanna Ruth Wierenga (hereafter "Wierenga"). Connor was operating an automobile owned by his father, Donald Haas (hereafter "Donald") and for which Plaintiff State Farm Mutual Automobile Insurance Company (hereafter "State Farm") provided liability insurance coverage. Donald was the named insured, and Connor was a covered insured under his father's policy. The State Farm policy provided up to $100,000 in bodily injury coverage and $100,000 in property damage coverage. (Dkt. No. 1 ¶ 8).

Counsel for Wierenga wrote State Farm on December 29, 2021, demanding settlement from State Farm. The letter was described as a "Timed *Tyger River* Demand" (the "TLD"). (Dkt. No. 36-1 at 2). The TLD had attached medical records and was supposed to include a ten-page

1

medical bill, although apparently only one page of the medical bill was sent. (Dkt. No. 36 at 6-7). State Farm argues that Wierenga's counsel made two different time limited demands in the TLD: one requiring payment of $100,000 by January 5, 2022, and another requiring payment within 30 days of mailing. (Dkt. No. 36-1 at 4). Further, State Farm argues that the TLD demanded "your policy limits," which was $200,000 rather than $100,000. (*Id*.).

A State Farm adjustor contacted Wierenga's counsel on January 12, 2022, and informed him that State Farm had received only one page of the medical bills. The adjustor further asked Wierenga's counsel for an extension of the time to respond to the demand letter, but Wierenga's counsel denied the request for an extension. (Dkt. No. 36 at 6-7). State Farm ultimately declined to accept the TLD because it was concerned that the TLD potentially exposed one of its insureds, Donald, to liability notwithstanding the tendering of policy limits. Thereafter, Wierenga sued Donald and Connor in state court for negligence concerning the automobile accident.

A mediation was subsequently conducted without State Farm being present, which included Wierenga, Donald, Connor, and their personal counsel. A mediated settlement agreement (the "MSA") was reached which provided that: (1) State Farm would pay $192,506.00; (2) Connor would execute a confession of judgment for $2 million dollars to Wierenga; (3) Donald would be dismissed with prejudice; (4) Connor would assign any bad faith claim he had against State Farm to Wierenga; and (5) the MSA must be accepted by State Farm or would be null and void. (Dkt. No. 39-3 at 2).

After State Farm was presented with the MSA, its counsel, David Rheney, wrote the personal counsel for Connor and Donald on July 31, 2023, at 4:03 p.m. and asked for written confirmation that they favored the MSA. (Dkt. No. 70-1 at 3). Counsel for Connor and Donald, Mary Linton, responded by email on August 1, 2023, at 8:24 a.m.: "You are correct. Both Connor

and Don request that State Farm agree to and execute the proposed agreement circulated at mediation." (*Id*. at 2). Rheney, counsel for State Farm, advised all of the parties to the MSA on August 1, 2023, at 12:31 p.m. that State Farm accepted the proposed agreement. (Dkt. No. 70-2 at 3).

State Farm initially brought this action as a declaratory judgment seeking a declaration that it had no duty to accept the TLD for a variety of reasons, including the lack of clarity regarding whether the TLD provided a release for both of its insureds, Donald and Connor. (Dkt. No. 1 ¶ 26). The issue of whether State Farm's decision not to accept the TLD without a clear indication that it covered both of its insureds constituted a bad faith refusal to settle has been the subject of dueling summary judgment motions from the parties. The Court has denied both motions because of genuine issues of material fact concerning the reasonableness of State Farm's decision not to accept the TLD which must be resolved by the fact finder at trial. (Dkt. Nos. 62, 74).

Defendants subsequently amended their Answer to add counterclaims for breach of contract and negligence. (Dkt. No. 52). The counterclaims were based on two primary issues: the decision of State Farm not to accept the TLD and the decision of State Farm to accept the MSA after being advised that its insureds, Donald and Connor, supported the agreement. State Farm has now moved for summary judgment on both counterclaims.

First, State Farm asserts that it is entitled to summary judgment on the negligence counterclaim under the South Carolina Supreme Court's decision in *Hood v. United Services Auto Association*, 910 S.E.2d 767, 772-73 (S.C. 2025), which holds that there can be no freestanding negligence claim by an insured against his insurance carrier because an insured's claims are limited to bad faith and breach of contract. (Dkt. No. 70 at 4; Dkt. No. 73 at 2-3). Second, State Farm asserts that Defendants' counterclaims related to the MSA are barred by a variety of common law

principles that a party cannot agree to or consent to his own injury and then sue a third party for that same injury. Third, State Farm asserts that Defendants breach of contract claim fails because they have identified no specific contractual provision that State Farm breached and any dispute over an insurer's alleged bad faith refusal to pay sounds in tort and not contract.

Defendants, arguing in opposition to State Farm's motion for summary judgment on their counterclaims, listed 15 alleged wrongful acts by State Farm that form the basis for their counterclaims.[1] These often overlapping claims come down to essentially two issues: the decision of State Farm not to accept the TLD and the decision of State Farm to accept the MSA agreed to by its insureds after receiving written confirmation from their insureds private counsel that they wanted State Farm to accept the agreement.

The issues relating to Defendants' counterclaims have been fully briefed and are ripe for disposition.

**Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the

---

[1] These include: (1) failing to settle the claim when it was reasonable to do so; (2) paying policy limits available to one of its insureds, Donald, without ensuring that its insured, Connor, was protected; (3) intentionally entering into an agreement with Wierenga which only protected Donald; (4) violating State Farm's own standard of care; (5) violating State Farm's duty of good faith and fair dealing to Connor; (6) failing to provide separate counsel for Donald and Connor; (7) failing to investigate and consider the claims against Donald; (8) rejecting the TLD without first investigating the legal liability of Donald; (9) failing to follow the normal and regular practice of State Farm; (10) failing to inform Connor of Wierenga's TLD offer; (11) rejecting the TLD without notifying the insured; (12) conducting negotiations solely for its own interests and in disregarding Connor's rights and interests; (13) engaging in unreasonable action when processing a claim; (14) processing the claim of Wierenga against Connor in bad faith; and (15) favoring Donald over Connor. (Dkt. No. 72 at 8-9).

portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Discussion

A. <u>The Defendants' Negligence Claim is Barred under *Hood v. United Services Auto Association*</u>

The South Carolina Supreme Court recently held in *Hood v. United Services Auto Association* that in suits by an insured against his carrier, the only viable causes of action are breach of contract and bad faith. 910 S.E.2d at 772-73. The Supreme Court explained that there is no "freestanding negligence claim" allowed in these cases under South Carolina law and that negligence is "merely evidence for a bad faith claim." *Id*. at 772. A negligence claim, the *Hood* court ruled, "would be entirely duplicative" of a bad faith claim. *Id*. "In sum, we take this opportunity to clarify what was already clear:  the only claims available to the insured under an insurance contract are contract and bad faith claims." *Id*. at 773.

Defendants make no effort to explain, distinguish or otherwise argue against the *Hood* decision. The Court grants State Farm's motion for summary judgment on the negligence counterclaim.

B. <u>Defendants' counterclaims related to the MSA are barred by common law principles that a party cannot agree to or consent to his own injury, and then sue a third party for that same injury</u>.

The record before the Court clearly establishes that the MSA was negotiated and agreed to initially by Wierenga, Donald, Connor, and their personal attorneys. This included the provision that Connor would confess judgment in favor of Wierenga in the amount of $2 million. State Farm was then presented the proposed agreement and informed that all parties, including its insureds, supported the MSA. Counsel for State Farm solicited and received from the personal counsel of Connor and Donald written confirmation that they supported the terms of the MSA. More than half of the alleged wrongful acts of State Farm that form the basis of Defendants' counterclaims relate to State Farm's alleged disloyalty to Connor in favor of Donald.

It is well established that a party cannot be the architect of his own injury and then sue someone else for that same injury. Restatement (Second) of Torts, § 892A (1979), states that "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for the harm resulting from it." The comment for § 892A explains that except for persons who are "mentally immature or otherwise incompetent . . . . no one suffers a legal wrong as a result of an act" to which he "freely consents or to which he manifests apparent consent." *Id.* cmt. a. The comment further states that this "principle is expressed in the ancient legal maxim, *volenti non fit injuria*, meaning that no wrong is done to one who consents." *Id.*

6

The doctrine of *volenti non fit injuria* has been recognized by the United States Supreme Court, the South Carolina Supreme Court, the Fourth Circuit Court of Appeals, other circuit courts, and has been applied to tort and breach of contract claims. *See, e.g.*, *United States v. Wormer*, 80 U.S. 25, 28-29 (1871); *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717-18 (4th Cir. 2015); *Commodity Credit Corp. v. Rosenberg Bros. & Co.*, 243 F.2d 504, 512 (9th Cir. 1957); *Surface v. Safeway Stores*, 169 F.2d 937, 942 (8th Cir. 1948); *Powell v. Drake*, 18 S.E.2d 745, 746 (S.C. 1942).

This doctrine squarely bars Defendants' counterclaims related to the MSA. Defendants negotiated the MSA and Connor and his father, through counsel, confirmed that they supported the agreement and wanted State Farm to agree to the terms of the MSA. Defendants now argue that State Farm was somehow disloyal to Connor by accepting the agreement which Connor indicated, through counsel, that he supported. Under these circumstances, all of Defendants' counterclaims related to the MSA are barred.[2]

> C. Defendants have not identified any specific provision of the Hass insurance contract with State Farm that was breached by State Farm declining to accept the terms of the TLD, and the dispute over the TLD is not a proper basis for a breach of contract claim.

Defendants additionally assert that State Farm breached the Haas insurance contract by declining to accept the terms of the TLD.[3] State Farm was obligated under its contract to provide a defense and to indemnify its insured up to the total amount of policy's limits. There is no

---

[2] Referencing the 15 claims set forth in Footnote No. 1, this would bar claims 2, 3, 4, 5, 6, 9, 12, 13, 14, 15. One of Defendants' claims, No. 6 on the list, alleges that State Farm violated Connor's rights by not providing him and his father separate counsel. But the MSA was negotiated by private counsel for Donald and Connor, not State Farm's counsel.

[3] Referencing the 15 claims set forth in Footnote 1, claims 1, 7, 8, 10, and 11 relate to Defendants' breach of contract claim based upon State Farm declining to accept the terms of the TLD.

allegation that State Farm failed to provide the Haas' defense counsel or to pay the policy limits. Instead, Defendants seek to convert a bad faith claim into a breach of contract claim.

The South Carolina Supreme Court has made it clear that a bad faith claim is a tort action and does not involve a breach of contract. In *Charleston County School District v. State Budget and Control Board*, 437 S.E. 2d 6, 9 (S.C. 1993), the South Carolina Supreme Court overruled certain earlier decisions of the South Carolina Court of Appeals suggesting that "a bad faith claim is one in contract." Instead, the Supreme Court held that such a claim arises exclusively in tort and is based on "an insurer's unreasonable refusal to settle within policy limits" *Id.* at 10. *See also Tadlock Painting Co. v. Maryland Casualty Co.*, 473 S.E.2d 52, 54 (S.C. 1996) ("[W]e have consistently emphasized that a bad faith action exists separately from an action in contract.")

State Farm correctly notes that Defendants have failed to refer to any provision of the insurance contract that it breached. This is because State Farm provided the defense and indemnity mandated by its insurance contract. Any claim related to State Farm declining to accept the terms of the TLD arises out of a bad faith claim, which is being addressed in State Farm's original declaratory judgment action. At trial, the Court will determine whether State Farm acted reasonably or in bad faith in declining to accept the TLD which it suspected exposed one of its insureds to further claims from Wierenga. This issue is not properly presented as a breach of contract claim.

## Conclusion

Based on the foregoing, the Court **GRANTS** State Farm's motion for summary judgment on Defendants' counterclaims of negligence and breach of contract (Dkt. No.70).

**AND IT IS SO ORDERED**.

s/ Richard Mark Gergel  
Richard Mark Gergel

United States District Court

December 11, 2025
Charleston, South Carolina